Filed 3/22/16  P. v. Lavallee CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE, | C077212 |
| Plaintiff and Respondent, | (Super. Ct. No. F13073) |
| v. | |
| RICHARD BRUCE LAVALLEE, | |
| Defendant and Appellant. | |

A jury found defendant Richard Bruce Lavallee guilty of one count of making criminal threats.  In a bifurcated proceeding, the trial court found true the special allegations that defendant had a prior strike, a prior serious felony conviction, and had served multiple prior prison terms.  The trial court sentenced defendant to seven years eight months in prison.  On appeal, defendant contends reversal is warranted because the prosecutor committed misconduct by misrepresenting facts during her closing argument.  Defendant further contends reversal is warranted for ineffective assistance of counsel

1

because trial counsel failed to request a limiting instruction regarding his criminal history. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2013, Sue Seidle and defendant lived with defendant's mother, Cheryl Davenport, in Grass Valley. Around 6:00 p.m. on February 13, 2013, defendant approached Seidle and told her she owed him money for his missing vehicle. In response, Seidle told defendant she did not know what he was talking about. Defendant then accused Seidle of lying, and said he "held [her] life in his hands."

In an attempt to get her attention, defendant repeatedly struck the couch near Seidle in an increasingly aggressive manner while glaring at her. Eventually, Seidle said, "Yes, Richard." In response, defendant asked Seidle if she "knew who some people were." When Seidle said she did not, defendant replied, "Well they and I hold your life in my hands." Defendant also told Seidle that he could slit her and Davenport's throats at any time.

During their conversation, defendant asked Seidle several times to call the police. Seidle practically begged defendant to leave but he insisted he would only leave with the police. The conversation ended when defendant told Seidle that he was either going to strangle or execute her if she did not "do something." Seidle ran from the house as fast as she could and drove to her cousin's house.

The police were called and Clint Lovelady of the Grass Valley Police Department responded to the cousin's house. After talking with Seidle, Officer Lovelady contacted defendant. Defendant admitted to Officer Lovelady that he made statements to Seidle about slitting her throat and executing her. Defendant explained he made these statements because Seidle and Davenport had drugged and raped him. Defendant also explained that he asked Seidle to call the police because he was going to harm her. Based on defendant's statements, Officer Lovelady arrested him.

2

Dr. Eugene Roeder, a clinical and forensic psychologist, testified for the defense. In preparation for his testimony, Dr. Roeder conducted a psychological evaluation of defendant that was composed of three parts:  (1) reviewing available records, such as police reports, prison and parole records (including records concerning defendant's receipt of psychiatric treatment), and the transcript of the preliminary examination in this case; (2) interviewing defendant; and (3) psychological testing.

Based primarily on the psychological testing, Dr. Roeder concluded defendant was suffering from a paranoid delusional disorder at the time of the alleged offense.  He explained that his conclusion was consistent with defendant's history, the observations of the people who saw defendant in February 2013, and defendant's own report of the incident.[1]  Dr. Roeder testified that a person suffering from a delusional disorder does not perceive reality accurately, which can impact whether he or she has formed specific intent.  However, Dr. Roeder testified he could not render an opinion as to whether defendant had a particular mental state at the time he committed the alleged offense.  In addition, he testified that it was not his opinion that one suffering from a delusional disorder could not form a particular mental state.  He also said that he did not know whether defendant perceived his statements to Seidle as threatening.

DISCUSSION

I

*Prosecutorial Misconduct*

Defendant contends reversal is warranted because the prosecutor committed misconduct by misrepresenting facts during her closing argument.  We disagree.

---

[1]     Dr. Roeder also concluded that defendant would "qualify" as suffering from psychoactive substance abuse due to his methamphetamine use.  While Dr. Roeder stated defendant had used methamphetamine in the past and substance abuse can cause a delusional disorder, he testified it was more likely than not that defendant's delusions were not brought about by substance abuse but rather a long-standing mental disorder.

"The standards governing review of [prosecutorial] misconduct claims are settled. 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such " 'unfairness as to make the resulting conviction a denial of due process.' " [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.' " (*People v. Friend* (2009) 47 Cal.4th 1, 29.)

" '[T]he prosecutor has a wide-ranging right to discuss the case in closing argument. He has the right to fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper.' " (*People v. Valencia* (2008) 43 Cal.4th 268, 284.) "Although prosecutors have wide latitude to draw inferences from the evidence presented at trial, mischaracterizing the evidence is misconduct." (*People v. Hill* (1998) 17 Cal.4th 800, 823.) Referring to facts not in evidence is also misconduct. (*Id.*, at pp. 828-829.) "When a claim of misconduct is based on the prosecutor's comments before the jury," " ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' " (*People v. Friend*, *supra*, 47 Cal.4th at p. 29.) In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. (*People v. Howard* (1992) 1 Cal.4th 1132, 1192.)

" 'To preserve a claim of prosecutorial misconduct for appeal, a criminal defendant must make a timely objection, make known the basis of his objection, and ask the trial court to admonish the jury.' [Citation.] There are two exceptions to this forfeiture: (1) the objection and/or the request for an admonition would have been futile, or (2) the admonition would have been insufficient to cure the harm occasioned by the misconduct . . . . A defendant claiming that one of these exceptions applies must find

support for his or her claim in the record.  [Citation.]  The ritual incantation that an exception applies is not enough." (*People v. Panah* (2005) 35 Cal.4th 395, 462.)

Defendant contends the prosecutor committed misconduct when in closing argument she mischaracterized Dr. Roeder's testimony by claiming Dr. Roeder failed to corroborate the veracity of any of his statements.  According to defendant, by falsely telling the jury Dr. Roeder failed to corroborate any of his statements, the prosecutor unfairly undermined his defense by casting doubt on the reliability of Dr. Roeder's conclusion that defendant was experiencing delusions on February 13, 2013.

As an initial matter, because defendant failed to object to the complained-of remarks or request a curative admonition, his claim of misconduct is forfeited.  (*People v. Panah*, *supra*, 35 Cal.4th at p. 463.)  Defendant asserts his failure to object should be excused because "it is unlikely that an admonishment would have cured the error." Defendant also suggests an objection would have been futile.  However, he failed to cite anything in the record that would excuse forfeiture.  Furthermore, the record does not disclose grounds for applying an exception to the forfeiture rule.  In any event, defendant's claim of prosecutorial misconduct is without merit.

Dr. Roeder testified that there were three components to his psychological evaluation of defendant:  review of historical records (including criminal records), an interview of defendant, and psychological testing.  On cross-examination, Dr. Roeder admitted he did not review available records to verify defendant's claim that his prior offenses were drug-related.  During her closing argument, the prosecutor told the jury, "And what you will note from the defense expert is that when Dr. Roeder went through the evaluation, he did not bother checking the v[e]racity of any of the defendant's statements.  He clearly had access to that information.  This is one of only three parts that Dr. Roeder bas[e]s his opinion on and does not bother to check to see whether or not the statements . . . the defendant makes about his prior history are true or not.  He basically bases his opinion on a multiple choice test that the defendant took."

5

We conclude the prosecutor's remarks did not constitute prosecutorial misconduct. A fair reading of the record reveals the prosecutor's remarks did not mischaracterize the evidence. While the prosecutor stated Dr. Roeder had failed to check the veracity of "any" of the defendant's statements, this remark was made in the context of a discussion regarding information about defendant's "prior history" that Dr. Roeder had "access" to. A reasonable interpretation of the prosecutor's remarks is that Dr. Roeder did not verify defendant's statement that his prior offenses were drug-related. There is no reasonable likelihood the jury construed the prosecutor's remarks in the manner defendant claims. What the prosecution said was a direct reference to Dr. Roeder's testimony regarding defendant's criminal history. Moreover, the evidence against defendant was substantial and the complained-of remarks were insignificant to the critical issue in this case -- whether defendant made statements to Seidle with the specific intent they be taken as threats.[2] The primary defense theory was that defendant failed to form the requisite intent to be convicted of making criminal threats because he was suffering from a paranoid delusional disorder. Dr. Roeder's testimony was the only evidence offered by defendant in his defense. In evaluating defendant and drawing conclusions about his mental condition, Dr. Roeder testified he placed little weight on his interview with defendant and the most weight on the psychological testing.[3]

---

[2] To support a conviction for making a criminal threat, the prosecutor must prove, among other things, the defendant made the threat with the specific intent that the statement be taken as a threat, even if there is no intent of actually carrying it out. (See *People v. Toledo* (2001) 26 Cal.4th 221, 227-228; *People v. Wilson* (2010) 186 Cal.App.4th 789, 805.)

[3] At the Evidence Code section 402 hearing, Dr. Roeder explained that his opinion on defendant's mental condition was "based primarily on data other than what came from defendant." He further explained that defendant's statement regarding his prior offenses was not verified because it "was not particularly relevant" to his evaluation.

Because we find no prosecutorial misconduct, we reject defendant's unsupported contention that the trial court abused its discretion by failing to grant a new trial on this ground.

## II

### *Ineffective Assistance Of Counsel*

Defendant contends reversal is warranted for ineffective assistance of counsel because trial counsel failed to request a limiting instruction regarding his prior criminal history.  We disagree.

At trial, there was testimony indicating defendant had prior drug-related convictions and had been to prison and had been on parole.  There was also testimony indicating defendant abused methamphetamine in the past but stopped in 2009.

A defendant claiming ineffective assistance of counsel must demonstrate both deficient performance, i.e., representation below an objective standard of reasonableness and resulting prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693-694, 695-696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 217.)  In examining ineffective assistance claims, we accord great deference to counsel's reasonable tactical decisions, and there is a strong presumption counsel's performance falls within the wide range of reasonable assistance.  (*People v. Weaver* (2001) 26 Cal.4th 876, 925.)  " 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.' "  (*Id.* at p. 926.)  "If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation."  (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)  Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694 [80 L.Ed.2d at p. 698]; *Ledesma*, at pp. 217-218.)

On the record before us, we cannot conclude trial counsel was ineffective for failing to request a limiting instruction on defendant's criminal history. Defendant has shown neither deficient performance nor prejudice. The record is silent as to why a limiting instruction was not requested. Under the circumstances, it is possible trial counsel concluded it was not in defendant's best interest to highlight his criminal history by requesting a limiting instruction, especially since this history had been offered in the testimony of Dr. Roeder, defendant's own expert witness.

Given the strength of the evidence against defendant and the insignificance of defendant's drug-related criminal history to the critical issue of defendant's intent regarding the statements he made to Seidle, " '[a] reasonable attorney may have tactically concluded that the risk of a limiting instruction . . . outweighed the questionable benefits such instruction would provide.' " (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1053.) Accordingly, because the record does not shed light on why counsel failed to request a limiting instruction and a satisfactory explanation exists for not making such a request, defendant cannot establish that trial counsel's omission fell below a standard of reasonable competence. (See *People v. Stewart* (2004) 33 Cal.4th 425, 495 ["when the appellate record does not preclude a satisfactory explanation for counsel's actions, we will not find that trial counsel acted deficiently"].)

Furthermore, we find no prejudice from the failure to request a limiting instruction. The record persuades us that there was no reasonable probability the jury would have returned a more favorable verdict had the limiting instruction been given. As pointed out by defense counsel in his closing argument, there was no evidence defendant was using drugs at the time he spoke with Seidle on February 13, 2013. Further, Dr. Roeder testified that while methamphetamine abuse can cause a delusional disorder, he stated it was more likely than not the paranoid delusional disorder defendant was

suffering from was not "methamphetamine induced." Under the circumstances of this case, we conclude the testimony regarding defendant's prior drug-related offenses had no bearing on the criminal threats charge, and it is unreasonable to conclude the jury improperly utilized such testimony to establish the requisite intent, i.e., defendant made statements to Seidle with the specific intent they be taken as threats. Accordingly, trial counsel's failure to seek a limiting instruction does not constitute ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Murray, J.

/s/
Duarte, J.

9